UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FINANCIAL INFORMATION
TECHNOLOGIES, LLC,

    Plaintiff,

v.                                **CASE NO. 8:17-cv-00190-T-23MAP**

ICONTROL SYSTEMS, USA, LLC,

    Defendant.

_____/

## PLAINTIFF FINANCIAL INFORMATION TECHNOLOGIES, LLC'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE EXPERT REPORTS

### I.

### BACKGROUND

This action arises out of defendant's misappropriation of the confidential business information and trade secrets of plaintiff Financial Information Technologies, LLC ("Fintech") in violation of the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTFA") and the Florida Uniform Trade Secrets Act, *Fla. Stat.* §§ 688.001, *et. seq.* ("FUTSA"), as well as tortious interference under Florida common law, violation of the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA"), misleading advertising in violation of *Florida Statutes* § 817.41, injurious falsehood under Florida common law, and unfair competition under Florida common law. [Doc. 1 (Complaint)].

Over 25 years ago, Fintech began developing a unique and proprietary business model to allow for customized invoice information and electronic payments for distributors in the beverage alcohol industry. Fintech's unique suite of proprietary software systems and data analytics tools allows beverage alcohol distributors to streamline business processes and receive every payment in full and on time. It has taken Fintech more than 25 years, millions of investment dollars, thousands of development hours, and extensive sales and marketing efforts across the United States to develop its confidential information and trade secrets. Defendant iControl Systems, USA, LLC ("iControl") misappropriated this sensitive information by procuring the services of Mark Lopez ("Lopez"), Fintech's ex-Vice President of Operations, who formerly managed the activities of Fintech's activation department and technology department and had access to every aspect of Fintech's confidential information and trade secrets, [Doc. 1, ¶ 31], including, among other things, Fintech's proprietary software applications, systems file processing techniques, and data cleansing techniques. [Doc. 1, ¶¶ 16, 17]. Fintech alleges that iControl, with Lopez's active input used Fintech's Confidential Information and Trade Secrets to develop software product suites that are nearly identical to Fintech's products. [Doc. 1, ¶¶ 33-35]. Fintech filed separate actions against both Lopez and iControl but settled the action with respect to Lopez.

TPA 512398188v3

## II.

## EXPERT REPORTS

On March 17, 2017, the parties met and drafted the Case Management Report ("CMR"). [Doc. 7]. The CMR provides deadlines for each party to disclose its expert reports but is silent as to the deadlines for disclosing expert rebuttal reports. The parties did not discuss the issue of expert rebuttal reports when they conferred regarding the CMR.

Specifically, the parties agreed that plaintiff's "Disclosure of Expert Testimony" was due on November 1, 2017, and defendant's "Disclosure of Expert Testimony" was due on December 1, 2017. [*Id.* ¶¶ 3.a.(4)b., 4.a.(4)b.]. They further agreed to complete all discovery by February 1, 2018. [*Id.* ¶¶ 3.a.(4)d., 4.a.(4)d.]. In pertinent part, the CMR reads as follows:

> 3. **Discovery Plan (Plaintiff):** The parties jointly propose the following discovery plan for the plaintiff:
>
> . . . .
>
> b. **Disclosure of Expert Testimony:** Under Rule 26(a)(2)(D), the parties stipulate that the plaintiff's Rule 26(a)(2) disclosure is due on or before: **November 1, 2017.**
>
> c. **Supplementation of Disclosure and Response:** The parties agree that the plaintiff will supplement under Rule 26(e) **as permitted by the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida.**
>
> d. **Completion of Discovery:** The plaintiff will begin discovery in time to complete the discovery on or before **February 1, 2018.**
>
> 4. **Discovery Plan (Defendant):** The parties jointly propose the following discovery plan for the defendant:

TPA 512398188v3

    b.     **Disclosure of Expert Testimony:** Under Rule 26(a)(2)(D), the parties stipulate that the defendant's Rule 26(a)(2) disclosure is due on or before: **December 1, 2017.**

    c.     **Supplementation of Disclosure and Response:** The parties agree that the defendant will supplement under Rule 26(e) **as permitted by the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida.**

    d.     **Completion of Discovery:** The defendant will begin discovery in time to complete the discovery on or before **February 1, 2018.**

[*Id.*] (emphases in original).

On May 4, 2017, the Court issued a case management order ("CMO") incorporating by reference the deadlines proposed in the CMR. [Doc. 8 ¶ 1].

Fintech advised defendant that Fintech intended to use the expert report of Ivan Zatkovich, which Fintech had previously disclosed in the action against Lopez. Because the CMR does is silent as to the deadlines for disclosure of expert rebuttal reports, Fintech presumed that the deadlines would be governed by Federal Rule of Civil Procedure 26(a)(2)(D)(ii), which allows the disclosure of rebuttal reports within thirty days of the opposing party's expert disclosure.

On December 1, 2017, defendant submitted the expert reports of Dr. Sam Malek, George Thomas, and Oscher Consulting.[1] [Ex. A].

On January 2, 2018, Fintech disclosed expert rebuttal reports by Zatkovich and Mark E. Gauthier.[2]

---

[1] Defendant will file these reports under seal as Exhibits B, C, and D in support of Defendant's Motion to Strike Expert Reports. [Doc. 44 at 3 n. 4].

TPA 512398188v3

On January 16, 2018, iControl filed its "Motion to Strike Expert Rebuttal Report[s]," arguing that Fintech's rebuttal reports are untimely under the CMR and in any event are not rebuttals because they express original opinions unrelated to the arguments propounded by iControl's experts. [Doc. 44]. For the reasons stated below, the motion should be denied.

## III.

## <u>ARGUMENT</u>

iControl argues that the CMR's silence as to the deadline for filing rebuttal expert reports either: (1) entirely precludes reliance on expert rebuttal testimony in this case, [Mtn. to Strike at 4]; or (2) renders rebuttal reports subject to the CMR's expired deadlines for original expert disclosures, in which case Fintech's rebuttal reports would be untimely. [*Id.* at 6].

iControl's arguments should be rejected. Fintech timely submitted its expert rebuttal reports within thirty days of iControl's expert disclosures, as permitted by Federal Rule of Civil Procedure 26(a)(2)(D)(ii), which provides as follows:

> (D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. *Absent a stipulation or a court order*, the disclosures must be made:
>
> . . . .
>
> (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), *within 30 days after the other party's disclosure.*

---

[2] Defendant will file these reports under seal as Exhibits E and F in support of Defendant's Motion to Strike Expert Reports. [Doc. 44 at 3 n.4].

TPA 512398188v3

(emphases added). As the overwhelming majority of cases have ruled, a CMR's silence as to the deadlines for disclosing expert rebuttal reports does not supersede Rule 26(a)(2)(D)(ii). Instead, the Rule acts as a gap-filler. iControl does not - - - and cannot - - - dispute that Fintech's expert rebuttal reports were timely disclosed when measured against Rule 26(a)(2)(D)(ii).

Moreover, the reports should not be stricken because iControl has suffered no prejudice. The expert rebuttal reports were disclosed about a month prior to the close of discovery. iControl has in fact deposed Zatkovich on the subject of his rebuttal report, and a similar deposition of Gauthier is scheduled for January 31, 2018. Moreover, if the Court determines that iControl would need additional time in which to propound discovery related to Fintech rebuttal reports, the appropriate remedy would be to extend the discovery deadline, not to strike the reports. *See* cases cited *infra* at 9-12.

iControl alternatively argues that Fintech's rebuttal reports are not bona fide rebuttals because they do not "'directly address[] . . . assertion[s] raised by [Fintech]'s experts'" and instead "offer a 'separate and distinct analysis.'" [Mtn. to Strike at 7] (internal citations omitted). iControl therefore asserts that they constitute original expert reports and are untimely pursuant to the CMR's expired deadline for original expert disclosures.

This latter contention is also meritless. As to this issue, the expert rebuttal reports speak for themselves. These points are developed in detail below.

TPA 512398188v3

**A.    Fintech Timely Disclosed Its Expert Rebuttal Reports Under Federal Rule of Civil Procedure 26(a)(2)(D)(ii).**

iControl argues that the CMR's silence as to the deadline for filing rebuttal expert reports either: (1) entirely precludes relying on rebuttal reports in this case, [Mtn. to Strike at 4]; or (2) renders the rebuttal reports subject to the CMR's expired deadlines for original expert disclosures. [*Id.* at 6]. iControl cites no authority in support of the first proposition, and only two in support of the latter proposition, *Eckelkamp v. Beste*, 315 F.3d 863, 872 (8th Cir. 2002), and *Bachtel v. Taser International, Inc.*, 2012 WL 5308052, at *2 (E.D. Mo. Oct. 29, 2012), both of which are distinguishable.

In each of those cases, unlike the instant case, the expert rebuttal reports were disclosed more than thirty days after the opposing party's expert disclosures and were therefore untimely under Federal Rule of Civil Procedure 26(a)(2)(D)(ii). As a result, the portion of those opinions on which Defendant relies—stating that a CMR's silence as to rebuttal reports supersedes Rule 26(a)(2)(D)(ii)—is dicta. In other words, the result in *Eckelkamp* and *Bachtel* would have been the same regardless of whether a CMRs' silence trumps the Federal Rule, or vice versa. Either way, the rebuttal reports in those cases were untimely.

At least one court has examined and expressly rejected *Eckelkamp* on this basis. *See S.E.C. v. Badian*, 2009 WL 5178537, at *6, ¶ 28 (S.D.N.Y. Dec. 23, 2009); *see also id.* at *4, ¶ 21 ("I stated that my Scheduling Order was silent on rebuttal reports, but certainly did not exclude them. I noted that . . . subdivision

TPA 512398188v3

[(D)](ii) of Rule 26(a)(2) is applicable because there is an 'absent[ce]' of any contrary 'stipulation' or 'court order'").

Indeed, the overwhelming majority of courts that have addressed this issue have concluded that:

> [a] CMSO's failure to set a deadline for the disclosure of rebuttal expert witness reports does not mean that rebuttal expert witness reports are not permitted. It simply means that rebuttal expert witness reports must be submitted within the period set forth in Rule 26(a)(2)(D)(ii). . . . *This is the prevailing rule . . . throughout the country.*

*Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at *17 (M.D. Fla. Oct. 25, 2013) (emphasis added) (collecting five cases); *see also Lee-bolton v. Koppers Inc.*, 2015 WL 11110548, at *2 (N.D. Fla. Sept. 21, 2015),[3] *on reconsideration on other grounds,*[4] 2015 WL 6394504 (N.D. Fla. Oct. 22, 2015). Not only does this interpretation accord with common sense and rules of construction, but it supports important policy considerations as well. As other courts have noted,

---

[3] ("Rule 26(a)(2)(D)(ii) of Federal Rules of Civil Procedure expressly addresses the issue of the applicable time limit for disclosure of rebuttal expert witnesses where, as here, the Court's scheduling order is silent on the issue. . . . The prevailing view among district courts in this circuit and throughout the country is that Rule 26(a)(2)(D)(ii) applies when the court has not ordered any deadlines for the disclosure of rebuttal expert witnesses.")

[4] The *Lee-bolton* court later granted Defendant's motion for reconsideration of the order denying Defendant's motion to strike Plaintiff's expert rebuttal reports, upon being informed by Defendant that the reason the CMO was silent on the issue of rebuttal experts was that "Plaintiffs' counsel [had] expressly discussed the issue [of rebuttal experts] with the Court [at the scheduling hearing] and represented to the Court that it would not be utilizing rebuttal experts." *Lee-bolton v. Koppers Inc.*, 2015 WL 6394504, at *2 (N.D. Fla. Oct. 22, 2015). The *Lee-bolton* court distinguished *Teledyne* as "appl[ying] only when the Court has not expressly addressed deadlines for disclosures of rebuttal expert witnesses." *Id.* at *3. The court explained that "when the Court issued its Order denying Defendants' motion to strike rebuttal expert reports, the Court was not informed about the discussions with the Court and the representations made to the Court at the . . . scheduling hearing. Had the Court been informed of these discussions the Court would not have denied Defendants' motion to strike." *Id.*

8

Defendant's interpretation of the scheduling order would allow Defendant to foreclose Plaintiff's ability to call a rebuttal expert simply by waiting until the Defendant's expert deadline to disclose its expert. . . . Thus, if this Court were to proceed under Defendant's theory of the scheduling order deadlines, it would countenance an inequitable progression of the case wherein Defendant was allowed to surprise Plaintiff with an expert witness not subject to attack by rebuttal expert testimony.

*Georgel v. Preece*, 2014 WL 12647775, at *2 (E.D. Ky. Dec. 10, 2014) (expressly declining to follow *Eckelkamp* and its progeny); *see also Pierce v. Novastar Mortg., Inc.*, 2007 WL 636029, at *2 (W.D. Wash. Feb. 26, 2007) (same). In short, Defendant's interpretation of the CMR and Federal Rule of Civil Procedure 26(a)(2)(D)(ii) should be rejected.

## B. iControl Has Suffered No Prejudice Because iControl Has Already Deposed Zatkovich On The Subject Of His Rebuttal Report, and a Similar Deposition of Gauthier is Scheduled for January 31, 2018

Even if Fintech's disclosure of its rebuttal reports were untimely, iControl cannot demonstrate any prejudice. A district court may not exclude untimely disclosed expert testimony where, as here, "the failure is substantially justified or is harmless." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008) (*citing* Fed. R. Civ. P. 37(c)(1)). "The purpose of the Rule 26(a) disclosure requirements is to provide notice to opposing counsel as to what an expert witness will testify. . . . Notice permits opposing counsel the opportunity to prepare adequate and effective cross-examination, and ensures that there will be no unfair surprise." *Silverstein v. Procter & Gamble Mfg. Co.*, 700 F. Supp. 2d 1312, 1320 (S.D. Ga. 2009) (citation omitted). "Consequently, '[a] party's failure to

9

properly disclose an expert,' including improper designation of an expert under Rule 26(a)(2)(D)(ii), 'is harmless when no prejudice results to the opposing party.'" *Leaks v. Target Corp.*, 2015 WL 4092450, at *4 (S.D. Ga. July 6, 2015) (quoting *Silverstein*, 700 F. Supp. at 1320). Courts have found that striking expert testimony is "an extreme and unnecessary sanction" where there is "no evidence of willful or stonewalling delay as to [disclosure of the] written report of [the] expert." *Hyman v. Harrison*, 2009 WL 10670855, at *1 (M.D. Fla. Feb. 2, 2009) (Pizzo, J.) (denying motion to strike untimely disclosed expert report on that basis) (*citing, e.g., OFS Fitel, LLC*, 549 F.3d at 1365).

> In determining whether to allow an untimely expert report under Rule 37(c)(1), the Court considers: (1) the unfair prejudice or surprise of the opposing party; (2) that party's ability to cure the surprise; (3) the likelihood and extent of disruption to the trial; (4) the importance of the evidence; and (5) the offering party's explanation for its failure to timely disclose the evidence.

*Teledyne*, 2013 WL 5781274, at *12.

iControl asserts in conclusory fashion that "[t]he filing of the reports after the date set for expert disclosure puts iControl at a disadvantage because of the limited time available to complete discovery and file dispositive motions." [Mtn. to Strike at 6]. However, at the time Fintech disclosed the rebuttal reports, there remained about a month left before the discovery cutoff. iControl has in fact deposed Zatkovich on the subject of his expert rebuttal report, and a similar deposition of Gauthier is scheduled for January 31, 2018. Moreover, iControl has tactically chosen not to move in the alternative for additional time in which to conduct supposedly necessary expert discovery.

10

Courts have repeatedly found an abuse of discretion to strike expert reports under similar circumstances. *See OFS Fitel, LLC*, 549 F.3d at 1363-64 (reversing as abuse of discretion district court's exclusion of expert report untimely submitted on November 3rd, 2006, because the other party "had ample time to take [the expert's] deposition in November ... and designate its rebuttal expert"); *Leaks*, 2015 WL 4092450, at *4 (denying motion to exclude plaintiff's untimely expert report where defendant "took his deposition on the penultimate day of discovery"); *Teledyne*, 2013 WL 5781274, at *13 ("Teledyne's untimely expert reports were submitted more than a month before the discovery deadline, giving Defendants more than enough time to take depositions and designate rebuttal experts, if any were needed."); *Cunningham v. Mylan, Inc.*, 2010 WL 11507559, at *2 (M.D. Fla. Aug. 9, 2010) (Pizzo, J.) (denying motion to strike expert report because, among other reasons, the moving party was not prejudiced by the expert report and "has the ability to depose [the expert]"); *Silverstein*, 700 F. Supp. 2d at 1320 (failure to disclose expert was harmless where opposing party "in fact, already took his deposition"); *E.E.O.C. v. Pac. Mar. Ass'n*, 2001 WL 1729050, at *1 (D. Or. Nov. 26, 2001) (failure to disclose expert witness was harmless where one of the defendants had already deposed him and previously had been provided all of the evidence on which the expert relied in his report).

Moreover, where a party has not had adequate time to propound discovery in response to expert reports, courts have fashioned as the appropriate remedy an extension of the discovery deadline, not striking the reports. *See, e.g., Lee-bolton,*

TPA 512398188v3

2015 WL 11110548, at *2 ("[W]hile there may be some prejudice to Defendants in having to take rebuttal expert witness depositions in an abbreviated period of time [i.e., two weeks before the close of discovery], the Court concludes that any prejudice can be remedied by permitting Defendants to depose Plaintiffs' rebuttal experts beyond the [discovery] deadline. Plaintiffs have offered to make their experts available for deposition promptly and therefore there should not be any prejudice to Defendants").

The expert rebuttal reports are essential to Fintech's case. Gauthier's rebuttal testimony is Fintech's primary evidence of its damages, and Zatkovich's rebuttal testimony is crucial to show that iControl developed its offending software program in an abbreviated time frame by using the services of Lopez, who repeatedly worked with iControl software development team to copy proprietary and confidential features of Fintech's competing software. To the extent Fintech's disclosure of the reports was untimely, such untimeliness is justified by Fintech's reasonable reliance on, and compliance with, the deadline set forth in Federal Rule of Civil Procedure 26(a)(2)(D)(ii).

C. **Gauthier's Report Qualifies As A Rebuttal Report Because It Is Intended Solely To Contradict And Rebut Evidence On The Same Subject Matter Identified By Defendant's Expert, Oscher**

iControl argues that Gauthier and Zatkovich's recently disclosed reports are not rebuttal reports but are in fact original expert reports because they set forth their own "separate and distinct analys[e]s" unrelated to the arguments raised by iControl's experts. [Mtn. to Strike at 7]. iControl contends that because these

12

reports constitute original expert reports, they were untimely under the November 1, 2017 deadline for disclosure of expert reports set forth in the CMR, [Doc. 7, ¶ 3.a.(4)(b)], and cannot take advantage of the later deadline for rebuttal reports set forth in Federal Rule of Civil Procedure 26(a)(2)(D)(ii).

This argument should be rejected. Federal Rule of Civil Procedure 26(a)(2)(D)(ii) defines an expert rebuttal report as one that "is intended solely to contradict or rebut evidence on the same subject matter identified by another party" in the other party's expert report. At least one court has cautioned that this language should be read broadly. A "[narrow] interpretation is a recipe for needless delay during the discovery phase" because, as in the instant case, it invites trivial disputes as to whether an expert report qualifies as a rebuttal. *Badian*, 2009 WL 5178537, at *5. Here, Gauthier's report qualifies as a rebuttal report because it squarely addresses and neutralizes each of the arguments raised by Oscher, iControl's damages expert.

Oscher challenged Fintech's lost profits calculation on two grounds. First, he argued that Fintech's calculation was incomplete because it consisted only of lost revenues, not lost profits. According to Oscher, Fintech would need to identify "the incremental expenses associated with the lost revenue" and subtract those expenses from lost revenue in order to determine lost profit. [Doc. 44, Ex. D at 8]. Gauthier's report rebuts this argument head-on. The substantive part of the report begins at page four, where Gauthier calculates Fintech's annual recurring lost

13

revenue from former and/or existing customers.[5] [Doc. 44, Ex. F]. Next, page five calculates Fintech's average profit margin, which Gauthier expresses as "net income as a percentage of sales." [*Id.*]. Gauthier then multiplies Fintech's average profit margin by its annual recurring lost revenue in order to calculate Fintech's annual recurring lost profit.[6] [*Id.*].

Gauthier's use of Fintech's profit margin in his calculations neutralizes Oscher's argument that Fintech had improperly failed to account for Fintech's costs when determining lost profits. By reducing Plaintiff's lost revenue according to Fintech's profit margin, Gauthier arrived at a figure that should be unobjectionable to Oscher.

Second, Oscher opined that Fintech's damages figures were unpersuasive because Fintech had not provided any "historical documentation" to show the difference in Fintech's financial performance before and after Lopez's wrongdoing. [Doc. 44, Ex. D at 8]. Gauthier addresses this concern on page 6, where he contrasts Fintech's annual growth rate from 2014 to 2016 and its annual growth rate in 2017, which is the year after iControl's competing product became widely commercially available. [Doc. 44, Ex. F]. Gauthier uses the drop in Fintech's growth

---

[5] Gauthier uses the same methodology as Fintech's Chief Financial Officer, Glenn Jones, upon whose deposition testimony Oscher relied. It is uncontested that there is nothing new about how Gauthier calculated lost revenues.

[6] Gauthier then discounts the annual lost profits to present value assuming they recur annually in perpetuity.

TPA 512398188v3

rate from 2016 to 2017 to calculate the annual lost profits resulting from a decline in Fintech's rate of customer growth.[7] [*Id.*].

iControl asserts that Gauthier's report "does not even purport to rebut a report of one of iControl's experts." [Doc. 44 at 8]. The basis for this assertion is unclear. Although Gauthier's report is not titled "rebuttal report" and the word "Oscher" does not appear in the body of the report, Gauthier's report is nevertheless clearly tailored to neutralize Oscher's, and Gauthier expressly lists Oscher's expert report among the documents Gauthier considered in forming his opinions. [Doc. 44, Ex. F at 13].

iControl also complains that "Gauthier's entire damage and lost profit analysis was based on information available before the deadline for Fintech to submit its initial expert disclosures and reports." [Doc. 44 at 8]. That is irrelevant. As other courts have explained:

> [t]he test under Rule 26(a)(2)(D)(ii) is not whether a rebuttal report contains new information, but whether it is "intended solely to contradict or rebut evidence on the same subject matter" of an opponent's expert report. *See Lott v. ITW Food Equip. Gp., LLC,* 2013 WL 3728581, at *21–22 (N.D. Ill. July 15, 2013); *see also Crowley v. Chait,* 322 F.Supp.2d 530, 551 (D.N.J.2004) (expert may include material in rebuttal report even though material could have been included in initial report). The rules do not require parties or their expert witnesses to anticipate all foreseeable opposing arguments and meet those arguments in their initial reports. "Such a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material." *Crowley,* 322 F.Supp.2d at 551. "All that is required is for the information to repel other expert testimony." *Id.*

---

[7] Gauthier then discounts the annual lost profits to present value assuming they recur annually in perpetuity.

15

*Teledyne*, 2013 WL 5781274, at *17. A rebuttal report does not lose its status as such by citing to evidence that was available before expiration of the deadline for initial expert disclosures. If an expert were not permitted to cite preexisting evidence in a rebuttal report, then the right to file rebuttal reports would be eviscerated.

**D.    Zatkovich's 2018 Report Qualifies As A Rebuttal Report; Alternatively, It Constitutes A Timely Supplemental Report Pursuant To Federal Rule Of Civil Procedure 26(e)**

In a two-sentence argument, iControl maintains that Zatkovich's Expert Rebuttal Report, too, is not a true rebuttal report because it "reinforce[s] [his] claim in his initial report that the uniqueness of the alcohol industry renders Fintech's information and processes proprietary even if they are publicly known and utilized widely in industries outside of the alcohol industry" and "offer[s] evidence and information that was available to Fintech well in advance of its expert disclosure deadline." [Doc. 44 at 10].

In fact, Zatkovich's 2018 report methodically and systematically addresses each of the arguments advanced by iControl's experts, Malek and Thomas. [Doc. 44, Ex. E]. It clearly qualifies as a rebuttal. When iControl's counsel deposed Zatkovich regarding the scope of the rebuttal report, Zatkovich testified as follows:

> Q.    What did you understand the purpose of this report is?
>
> A.    My purpose of this report was to respond to the testimony and reports provided by Sam Malek and George Thomas.
>
> Q.    And can you explain to us the methodology that you used in preparing your rebuttal report?
>
> A.    Sure. I reviewed the reports of Dr. Malek and Mr. Thomas. I reviewed the deposition transcript of Mr. Thomas. And based on

16

TPA 512398188v3

that, within the scope of my original report, I provided what I consider rebuttal arguments to the arguments presented by Dr. Malek and Mr. Thomas and identified any material that was available at that time to support those same opinions.

. . . .

Q. And when you use the term "rebuttal," what is your understanding of that term as it relates to the report that you prepared in this case?

A. In this particular case and in general, my opinion of a rebuttal report is that it's responding to other information or other opinions presented.

Q. When you say "other opinions presented," other than what?

A. Other than my own.

Q. So is it your understanding that the report, which we've identified as Exhibit 1, represents the specific responses that you have to specific issues raise by Dr. Malek and Mr. Thomas?

A. Yes. I would say that's accurate.

Q. That was the purpose in preparing your rebuttal report, correct?

A. Yes.

. . . .

A. . . . . The conclusions in my rebuttal report are no different than the conclusions in my original report. This is just additional support for that, specifically, going to the rebuttal of the opinions of Dr. Malek and Mr. Thomas.

[Ex. B at 5:24-9:5].

This conclusion is so obvious from the text of the rebuttal report that it is hardly necessary to argue the point here. *See Lee-bolton v. Koppers Inc.*, 2015 WL 11110548, at *3 (N.D. Fla. Sept. 21, 2015) (finding rebuttal report bona fide because it mentioned the opposing expert "sixty-two times and addresses the same subject matter as [the opposing expert's] report"), *on reconsideration on other grounds*, 2015

17

WL 6394504 (N.D. Fla. Oct. 22, 2015); *Teledyne*, 2013 Wl 5781274 at \*18 (finding rebuttal report to be bona fide because it mentioned "Dr. Cairns' Rebuttal" or "Dr. Cairns' Rebuttal Report" over thirty times and frequently quoted passages or reproduced tables and diagrams from the expert report that it rebutted). As discussed above, it is irrelevant that some of the evidence relied upon by Zatkovich may have been available before the expert disclosure deadline in this case.

To the extent that Zatkovich's Expert Rebuttal Report does not qualify as a rebuttal report, it constitutes a supplemental report and as such was clearly timely under Federal Rule of Civil Procedure 26(a)(2)(E) and (e). The latter subsection provides as follows:

> (e) Supplementing Disclosures and Responses.
>
> (1) *In General.* A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . .
>
> (2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Federal Rule of Civil Procedure 26(a)(3)(B), in turn, provides that pretrial disclosures are due "30 days before trial," a deadline which has yet to pass in the instant case.

Any new material discussed in Zatkovich's rebuttal report falls squarely within the scope of Zatkovich's duty to supplement. In Zatkovich's original 2017 expert

18

report rendered in the Lopez matter, he noted that iControl had yet to produce many documents responsive to Fintech's requests for production, and Zatkovich expressly reserved the right to supplement his expert report if they became available. [Ex. C at 6]. Many months later, iControl produced some of those documents, consisting of highly probative emails from the time period during which Lopez served as a consultant for iControl. In the emails, iControl's product development team expressly and repeatedly solicits and receives advice from Lopez on how to copy various functionalities achieved by Fintech's software. [Doc. 44, Ex. E at 11-14]. To bar Zatkovich from opining on these documents, based on iControl's strained reading of the Federal Rules of Civil Procedure, would be a miscarriage of justice.

## IV.

## CONCLUSION

This Court should deny the Defendant's Motion to Strike Expert Reports for the reasons discussed above.

Dated: January 30, 2018.

Respectfully submitted,

/s/Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Catherine H. Molloy
Florida Bar No. 33500
Email: molloyk@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Boulevard
Suite 1900
Tampa, Florida 33602

TPA 512398188v3

Telephone: (813) 318-5700
Facsimile:  (813) 318-5900
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on January 30, 2018, I electronically filed the foregoing with the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Robert L. Rocke, Esq.
rrocke@rmslegal.com
Jonathan B. Sbar, Esq.
jsbar@rmslegal.com
Andrea K. Holder, Esq.
aholder@rmslegal.com
ROCKE, McLEAN & SBAR, P.A.
2309 S. MacDill Avenue
Tampa, Florida 33629

/s/ Richard C. McCrea, Jr.
Attorney

*TPA 512398188v3*