UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FINANCIAL INFORMATION
TECHNOLOGIES, INC.,

     Plaintiff,                                      Case No.:  8:17-cv-00190-T-23MAP

vs.

ICONTROL SYSTEMS, USA, LLC,

     Defendant.
_____/

## **ICONTROL RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS**

Defendant, iControl Systems USA, LLC ("iControl") files this Response to Plaintiff's Motion for Discovery Sanctions (Doc. No. 92) (the "Motion") filed by Financial Information Technologies, Inc. ("Fintech"), as follows:

**I.**     **BACKGROUND**

Fintech filed the Motion nearly three months after the February 1, 2018 discovery deadline, nearly two months after the March 1, 2018 dispositive motion deadline and approximately 38 days before the June 4, 2018 pretrial conference.  The Court should sanction Fintech for filing a frivolous Motion that improperly seeks to reopen discovery for the obvious purpose of delaying disposition of this matter because Fintech has been unable to obtain evidence of a misappropriation that never occurred.

Long before iControl began competing with Fintech in the alcohol or regulated industry, iControl provided similar payment services outside of the alcohol beverage industry including the electronic transfer of payment for grocery items, newspaper sales and scan based trading services utilized at grocery, drug and convenience store check-out lines.  iControl augmented its

existing software system in order to service alcohol beverage clients. iControl uses the same software platform to provide services to alcohol clients that it uses to service clients in other industries.

Before iControl hired Mark Lopez ("Lopez") as a consultant in 2013, iControl had already made the minor augmentation to its existing software platform to enable it to service alcohol clients. iControl serviced its first client in the alcohol industry in April 2013, prior to hiring Lopez and without any assistance from Lopez. Fintech admits that iControl did not misappropriate or utilize Fintech's source code.

Lopez was formerly employed by Fintech; however, he left the company in May 2012 to accept employment in California in an unrelated industry. Fintech does not claim that Lopez removed proprietary documents when he separated from Fintech. Fintech does not claim that Lopez violated any non-compete or non-solicitation covenants.

The more than 46,000 pages of development documents produced by iControl that are the subject of Fintech's Motion, demonstrate that Fintech's claims have no evidentiary support. Fintech has claimed throughout this litigation that iControl must have misappropriated Fintech's technology because iControl has insufficient documents showing its development of a payment application for the alcohol beverage industry. *See* Rebuttal Report of Fintech expert, Ivan Zatkovich, p. 15: "Lack Of iControl Project Documents Shows Use Of Proprietary Information." (Doc. No. 44-5; [S-47]). Contrary to Fintech's position, iControl has produced substantial documentation showing its development of an alcohol payment application.

In its Fifth Request for Production, served December 18, 2017, Fintech requested broad categories of documents related to iControl's development of its alcohol beverage application for the period of January 1, 2013-December 31, 2014. iControl objected to the request on the grounds that it was grossly overbroad and burdensome to produce. For example, the request

included the time period before Lopez even began working for iControl and because it was not limited to the specific items that Fintech claims were misappropriated.

Regardless, iControl agreed to produce the documents in advance of the hearing pursuant to a stipulation of the parties and subsequently produced over 46,000 pages of documents that eviscerate Fintech's hypothesis of misappropriation based on the alleged absence of development documents, demonstrating that iControl's technical employees created an alcohol billing application by augmenting iControl's existing platform before Lopez was even hired by iControl as a consultant (which explains why iControl began servicing its first alcohol payment client **prior** to hiring Lopez).

Underscoring Fintech's desperation to avoid disposition of this case, it seeks sanctions against iControl for documents allegedly withheld **by Lopez** in the separate Lopez litigation, which Fintech agreed to dismiss with prejudice on May 5, 2017 (after the parties were forced to spend hundreds of thousands of dollars litigating the dispute). Fintech makes the false claim that it has already been severely prejudiced because it dismissed the Lopez litigation with prejudice without having the documents at issue in its possession.

In fact, Fintech's CFO and corporate representative, Glenn Jones ("Jones"), testified that Fintech dismissed the case against Lopez because "it didn't believe that Lopez had much capacity to – to pay damages." (Ex. A (filed under seal), *Jones Depo*, 01/30/18, at 12). Jones also testified that the purpose of the lawsuit against Lopez was to cause iControl to incur significant attorney fees. (Doc. 15-1; *Jones Depo*, 12/15/16, at 50-51). Fintech's expert, Ivan Zatkovich, testified that Lopez was sued for the purpose of obtaining information to use against iControl. Zatkovich testified:

> A: And I'm telling you my opinion is they dismissed the case with Mr. Lopez only after they had accomplished enough due diligence

>to file a suit after -- against iControl and I believe that is significant.
>
>Q: And what's significant about that?
>
>A: That, in my opinion, that was the primary goal of Fintech is to seek litigation against iControl.

(Ex. B (filed under seal), *Zatkovich Depo*, 01/23/18, at 126:1-7)

**The User Administration Document**

Among the more than 46,000 pages of development documents produced by iControl in response to Fintech's Fifth Request for Production, Fintech cites a single four page document that identifies Lopez (iControl 023013-023016) and appears to have been drafted by Lopez (the "User Administration Document").

The User Administration Document, dated October 13, 2013, discusses Fintech's user administration platform and includes screen shots from a Fintech demonstration available on Fintech's publicly available website. (Doc. No. 68-11). Fintech claims the document is responsive to Request 1 of Fintech's Fourth Request for Production which seeks "**All emails** transmitted during 2013 and 2014…" and Request 22 of Fintech's First Request for Production which seeks "All documents sent to or received from any actual or potential witness in this matter."

Contrary to Fintech's position, the User Administration Document is not an e-mail and it is not correspondence to or from any witness. Fintech's absurd suggestion is that iControl was somehow required to produce every piece of paper sent or received by Lopez as well as every other witness identified by iControl that is employed by iControl during the entire period the witness worked for iControl.

iControl interpreted the request the same way as Fintech to refer to third parties outside of the respective companies contracted regarding potential testimony. In iControl's first request for production to Fintech served May 23, 2017, iControl sought "(a)ll documents and

communications sent to or received from any actual or potential witness in this matter." Fintech responded as follows: "See documents produced in Lopez and Sanderson." Of course, Fintech did not produce every piece of paper sent to or from the 17 Fintech employees it identified as witnesses in its Rule 26 disclosures.[1] (Ex. C, Fintech's Rule 26 Disclosures dated 05/31/17)**.**

The User Administration Document is an internal working document that was obtained from iControl's internal FogBugz system in which iControl representatives could login and share information with other iControl representatives regarding ongoing projects. As Fintech is well aware, iControl performed an exhaustive search of various email accounts to locate and produce e-mails that Lopez sent to or from iControl representatives during the period he was working as a consultant for iControl (and was not yet using an iControl email address, making his email address easier to identify).

Fintech was well aware of iControl's objection to production of its internal development documents as Fintech sought production of these documents in its First Request for Production and in its May 2017 response, iControl objected as follows:

> 18. All software development project plans, test plans, requirement documents, timelines, and project communications.
>
> **RESPONSE: Objection. The request is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. The request is unlimited in scope and potentially encompasses voluminous documents unrelated to the issues in dispute. The request also seeks confidential and proprietary information of iControl.**
>
> 19. All documents relating to software development project plans, test plans, requirement documents, timelines, project communications, and methodology used to build software releases.

---

[1] Equally absurd is Fintech's suggestion that Lopez should have produced this document in the Lopez matter because a screen shot from a publicly available website somehow constitutes a document downloaded from a Fintech database, computer or server. Lopez answered "none" to the request because he did not possess documents downloaded from Fintech's systems when he was employed by Fintech and had access to Fintech's information.

**RESPONSE: Objection. The request is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. The request is unlimited in scope and potentially encompasses voluminous documents unrelated to the issues in dispute. The request also seeks confidential and proprietary information of iControl.**

20. All documents evidencing who was assigned duties in connection with software development project plans, test plans, requirement documents, timelines, project communications, and methodology used to build software releases.

**RESPONSE: Objection. The request is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. The request is unlimited in scope and seeks information about projects and individuals unrelated to the issues in dispute. The request also seeks confidential and proprietary information of iControl.**

21. All documents describing the methodology used to build software releases.

**RESPONSE: Objection. The request is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. The request is unlimited in scope and seeks information about procedures unrelated to the issues in dispute. The request also seeks confidential and proprietary information of iControl.**

Fintech did not file a motion to compel or otherwise take action to obtain iControl's development documents until it moved to compel as to the Fifth Request for Production, which request also sought iControl's development documents, and which iControl agreed to produce according to the parties' stipulation timely produced on March 27, 2018. Fintech's motion to compel as to the Fifth Request for Production was filed on February 7, 2018, after the February 1, 2018 discovery deadline.

In addition to the fact that iControl produced the User Administration Document in a timely manner and that it was not responsive to prior discovery requests, the document is unrelated to the issues in dispute because Fintech has never claimed that iControl misappropriated Fintech's user administration platform. The reason for this is simple— the

internal working document apparently prepared by Lopez was never utilized by iControl's technical department and Lopez did not participate in the development of iControl's user administration capabilities. Further, iControl's system offered user roles functionalities since its inception in 2005, and lastly, there is nothing proprietary about user administration capabilities as evidenced by the countless examples that are displayed on the internet. Finally, and as detailed in iControl's motion for summary judgment, like the rest of the information it has claimed constitutes a trade secret, Fintech failed to protect the information by displaying it on its publicly available website and by providing the information to its customers without any disclosure restrictions.[2]

**The Additional Development Documents Referenced in the Motion**

With respect to the handful of other development documents identified by Fintech in its Motion (among over 46,000 produced), it is unclear what Fintech even claims is the basis for retaking Lopez's deposition after the discovery cutoff as the documents do not identify, discuss or mention Lopez, contradicting the core of Fintech's entire lawsuit that iControl could not have developed a competitive product without obtaining misappropriated trade secret information from Lopez. Further, the documents identified demonstrate that customers converting from Fintech to iControl had no confidentiality restrictions regarding the use of their information and sometimes provided iControl with Fintech files to assist with the transition of the accounts. Fintech did not start requiring its customers to execute confidentiality agreements until sometime in 2015 and admitted that Fintech customers can utilize reports prepared by Fintech in any way they want because "it's their own information." (Doc. 15-1 at 29, 104).

---

[2] Similarly, Fintech has reviewed iControl's website and presentations that it has utilized. (Ex. D (filed under seal), PPLOP 008943). Fintech's chief information officer and executive vice president, Joe Kwo, testified that he reviewed iControl's website. (Doc. No. 80 at 30).

Fintech identifies the following additional documents in the Motion:

**iControl 010720**: The document dated November 2014 does not mention Lopez and discusses potential communications with an iControl client regarding an issue with purchase orders.

**iControl 039724**: The document (which is undated but appears to be from the July 2014 period) does not mention Lopez and discusses adding a distributor for an existing client and the conversion of the distributor's files to iControl's system. The document discusses that the distributor plans to send iControl some of its files and that customer uses a format similar to Fintech.

**iControl 028141-144**: These documents dated October 24 2013 do not mention Lopez and involve communications with a distributor customer who asks a Fintech business representative whether iControl's system provides a viewing functionality the customer receives from Fintech and another payment processor. The customer attaches screenshots of the customer's bank activity report from Fintech (again demonstrating that Fintech failed to restrict its customer's use of allegedly proprietary information). Further, iControl's business representative responds by noting that iControl already has a similar capability and notes that it is being used for a retail customer (Spartan) that iControl began servicing prior to Lopez providing any services to iControl.

**iControl 010623 and 010640**: These documents dated November 2014 do not mention Lopez and involve communications regarding the testing of a conversion of a distributor from Fintech to iControl for an iControl customer. The customer forwarded a file from Fintech, again demonstrating that Fintech failed to restrict customers from utilizing information and files provided by Fintech to its customers.

**iControl 010254 and 010256**: These documents dated August 11, 2014 do not mention Lopez and also involve discussions regarding the conversion of a customer from Fintech to iControl and in which the customer again sent its specifications from Fintech for purposes of assisting in the conversion to iControl.

**iControl 036567-036568** (Fintech's Motion references Exhibit K but does not identify the documents by specific bate stamp numbers): These undated documents also support iControl's position because the documents appear to simply identify the menus available on Fintech's publicly available website by broad categories such as "list of fintech members" which appears to reference the fact that Fintech listed all of its customers on its publicly available website. Fintech does not and cannot explain how a broad description of information available on Fintech's website is somehow a trade secret. Again, the documents do not mention Lopez and there is no indication or suggestion that Lopez prepared the documents.

With respect to the additional development documents, Fintech seeks to reopen discovery in order to depose Lopez about documents that he did not prepare, that do not reference him and that demonstrate iControl's development of an alcohol beverage application without the assistance of or input from Lopez.

**Correspondence Produced in September 2017**

Fintech also inexplicitly references correspondence from Lopez that Fintech admits was produced September 21, 2017 that it claims constitute communications in which Lopez gave advice to iControl regarding how Fintech overcame technical challenges. It is unclear why Fintech is referencing documents produced more than four months before the February 1, 2018 discovery deadline as a basis for taking Lopez's deposition. Fintech could have scheduled Lopez's deposition and moved for sanctions prior to the discovery deadline (to the extent it intended to claim that the timely production of documents in the present matter somehow is a

basis for sanctions for iControl's alleged failure to produce responsive document in response to a third party subpoena in a prior lawsuit).[3]

Contrary to Fintech's present position, Fintech's expert, Ivan Zatkovich, discussed the identified correspondence with Lopez in his rebuttal report but admitted he did not even know whether the recommendations were even implemented by iControl. He conceded that if iControl declined to follow Lopez's suggestions, then no misappropriation occurred. Ex. B (filed under seal), *Zatkovich Depo*, 01/23/18, at 142-147).

## II. <u>LEGAL ARGUMENT</u>

**The Court Should Deny the Motion to Reopen Discovery Because Fintech Has Failed to Establish Good Cause.**

A court may use its inherent authority to reopen discovery "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991). Indeed, "[t]he key to unlocking the inherent power of the Court is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). In addition, "[inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Fintech askes the Court to reopen discovery to re-depose Lopez based on iControl's alleged discovery abuses. However, as detailed above, iControl has complied with its discovery obligations, and Fintech is the party acting in bad faith.

A motion to reopen discovery is essentially a motion to modify the case management and scheduling order under Federal Rule of Civil Procedure 16(b). *Davken, Inc. v. City of Daytona Beach Shores*, No. 604CV207ORL19DAB, 2006 WL 1232819, at *4 (M.D. Fla. May 5, 2006). Rule 16(b)(4) permits a court to modify a scheduling order for "good cause." Reopening

---

[3] Of course, iControl disputes Fintech's suggestion that it purposefully withheld relevant correspondence in the Lopez matter. As Fintech is well aware, iControl did not have a centralized email server during the relevant time period and additional emails may have been located when iControl produced documents in the present matter.

10

discovery for duplicative information is not good cause. Id. at *4. Further, the "good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Inman v. Richman Prop. Servs., Inc.*, No. 3:13-CV-941-J-32MCR, 2014 WL 4639131, at *4 (M.D. Fla. Sept. 16, 2014), *quoting*, *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1418 (11th Cir.1998) (per curiam) (internal quotation marks omitted). Thus, the party seeking to modify the scheduling order has the burden to show that it acted diligently.

When considering whether to reopen discovery, the court should consider the following factors:

> 1) whether trial is imminent; 2) whether the request is opposed; 3) whether the non-moving party would be prejudiced; 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and 6) the likelihood that the discovery will lead to relevant evidence.

*Durden v. Citicorp Trust Bank, FSB*, No. 3:07-CV-974-J-34JRK, 2008 WL 11318338, at *7 (M.D. Fla. Nov. 25, 2008), *quoting*, *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (examining other circuit courts for relevant factors in determining whether discovery should be reopened) (internal citations omitted).

All factors should be considered and in resolving this issue, this Court should be guided by two overriding principles (1) a district court "has broad discretion in all discovery matters," *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982); and (2) there is a difference between an opportunity to conduct discovery and a failure "to make use of that opportunity." *See, Parrott v. Wilson,* 707 F.2d 1262, 1270 (11th Cir. 1983), *cert. denied,* 464 U.S. 936, 104 S. Ct. 344, 78 L. Ed. 2d 311 (1983); *Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1576 (11th Cir. 1985).

---

Interestingly, Fintech inexplicably produced multiple documents in the present matter that are clearly responsive to production requests served in Lopez.

It is entirely appropriate for this Court to deny Fintech's motion because "significant amount of discovery has already been obtained and further discovery would not be helpful." *Inglis v. Wells Fargo Bank N.A.*, No. 2:14-CV-677-FTM-29CM, 2017 WL 416989, at *2 (M.D. Fla. Jan. 31, 2017), *quoting*, *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) (upholding the district court's ruling that further discovery would not be helpful "primarily because all of these issues could have been addressed much earlier in this litigation").

In *Sosa*, the Eleventh Circuit upheld the trial court's decision to enforce its pre-trial order by denying leave to amend because the party seeking to amend failed to show good cause for belatedly amending her complaint. *Sosa*, 133 F.3d at 1418. In this case, Fintech did not file its motion to reopen discovery and re-depose Lopez until after the discovery completion deadline and the dispositive motion deadline had passed; therefore, it should be "treated with special disfavor." *Pushko v. Klebener*, No. 3:05-CV-211-J-25HTS, 2007 WL 2671263, at *1 (M.D. Fla. Sept. 7, 2007) (court denied motion to reopen discovery). Thus, "the moving party cannot establish the diligence necessary to show good cause if it had full knowledge of the information before the scheduling deadline passed or if the party failed to seek the needed information before the deadline." *Williams v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:09CV225/MCR/MD, 2010 WL 3419720, at *1 (N.D. Fla. Aug. 26, 2010) (denying motion to reopen discovery), *citing*, *See S. Grouts & Mortars, Inc. v. 3M Co.,* 575 F.3d 1235, 1241–42 n. 3 (11th Cir. 2009).

Numerous courts have denied motions to reopen discovery based on the fact that the party seeking the discovery failed to act diligently by failing to file the motion to reopen discovery promptly. *Tiya v. State Farm Fire & Cas. Co.*, No. 1:14-CV-01314-RGV, 2014 WL 12069849, at *2 (N.D. Ga. Nov. 20, 2014) (denying motion to reopen discovery because plaintiff's failure to "timely file a motion for an extension of discovery was clearly within counsel's reasonable control, and the absence of any explanation as to why counsel did not file

this motion until almost two weeks after the close of discovery weighs against finding good cause now"); *Branovations, Inc. v. Ontel Prod., Corp.*, No. 212CV306FTM29UAM, 2013 WL 12167927, at *1 (M.D. Fla. Sept. 5, 2013) (denying motion to take additional depositions because then "all pending deadlines would need to be extended, further delaying this action."); see also cases denying leave to amend based on the same standard, *Williams v. Baldwin Cty. Comm'n*, 203 F.R.D. 512, 517 (S.D. Ala. 2001) (motion to amend filed after scheduling order deadline denied because plaintiff failed to demonstrate good cause); *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 655 (N.D. Ga. 2008) (over two month delay between deposition and motion to amend does not show "good cause."); *Smith v. BCE Inc.,* No. Civ.A. SA04CV0303XR, 2005 WL 1593386, * 2 (W.D. Tex. June 10, 2005) (good cause not shown where amendment requested two months after plaintiff obtained relevant documents); *Thorn v. Blue Cross and Blue Shield of Florida, Inc.,* 192 F.R.D. 308, 310 (M.D. Fla. 2000) (good cause not shown when plaintiff waiting four months after deposition to file motion to amend).

District courts have broad discretion when managing their cases in order to ensure that the cases move to a timely and orderly conclusion. *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002). Based on the facts as detailed above, Fintech has no basis for reopening discovery. Fintech's seeks to reopen discovery to depose Lopez based on the production of correspondence that was produced in September 2017, many months before the February 1, 2018 discovery cut-off. Fintech had months to depose Lopez regarding the correspondence but declined to do so (which is not surprising since Fintech deposed Lopez twice in the Lopez matter).

Fintech has taken more than 20 depositions between the Sanderson, Lopez and iControl matters, with Fintech deposing multiple witnesses twice. In the iControl matter alone, Fintech has taken 10 depositions, including depositions of (a) iControl's corporate representatives, Sean

Zatkovich and Gilad Keren (b) iControl employee, consultant or former employee, Juan Johnson, Charles Clark, and Bill Harris, (c) iControl experts, Steve Oscher, Sam Malek and George Thomas, and (d) Goldman Sachs representatives, Charles Slick and Tucker Greene.

iControl timely produced development documents in response to Fintech's Fifth Request for Production. Fintech claims it is entitled to depose Lopez based on a handful of development documents out of more than 46,000 that were produced. The development documents were produced after the discovery cut-off because Fintech waited until the eve of the February 1, 2018 discovery cut-off to file its motion to compel, actually filing the motion on February 7, 2018. (Doc. 55). Fintech had months to seek iControl's development documents as it sent a substantively similar request seeking development documents in April 2017 to which iControl objected. Fintech makes the disingenuous claim that the development documents were responsive to prior discovery requests seeking e-mails and documents exchanged with witnesses.

Further, and as detailed above, Fintech fails to identify a valid basis for deposing Lopez as it cites a single four page document referencing Lopez out of the 46,000 development documents produced by iControl that includes screen shots from information Fintech made publicly available on its website and relates to an aspect of Fintech's system (user administration) that Fintech has never claimed was misappropriated. The document supports iControl, not Fintech, will not lead to relevant evidence that supports Fintech and is not a basis to reopen discovery.

The other development documents identified by Fintech also will not lead to relevant evidence as they do not even reference or identify Lopez. Fintech has had every opportunity and has in fact taken substantial discovery in this matter (in addition to the substantial discovery taken in Lopez which is the substantively identical lawsuit with Lopez instead of iControl as the defendant). The fact Fintech apparently has rethought its litigation strategy and would like to

depose Lopez for a third time after the dispositive motion deadline and years of litigation is not a basis for reopening discovery.

iControl would be severely prejudiced if Fintech is permitted to take additional discovery two months after the March 1, 2018 dispositive motion deadline after iControl has moved for summary judgment and approximately one month before the June 4, 2018 pretrial conference and two months before the July 2018 trial. Fintech's request dovetails with its attempt to supplement its response to iControl's summary judgment motion (Doc. 94) (which also discusses amending its expert's report and filing additional affidavits), which, if granted, would inevitably cause a continuance of the trial. It is clear that Fintech's Motion is an attempt to avoid disposition of the matter because it is unable to prove a misappropriation that did not occur. iControl has spent countless hours and hundreds of thousands of dollars litigating this matter and suffered significant disruption of its business for the simple reason that Fintech is disappointed that iControl has disrupted its virtual monopoly in the alcohol payment industry. Because Fintech failed to act diligently in seeking to reopen discovery, "the good cause inquiry" ends. *Lord v. Fairway Elec. Corp.,* 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002).

**III. CONCLUSION**

The Court should deny Fintech's Motion for Discovery Sanctions and instead sanction Fintech for filing a motion that includes frivolous claims (such as claiming that a written summary is an "email") in an attempt to delay disposition of this matter.

WHEREFORE, iControl respectfully requests the entry of an Order denying Fintech's Motion for Discovery Sanction and awarding iControl attorneys' fees and costs associated with responding to the Motion.

          /s/ Jonathan B. Sbar
          Robert L. Rocke, Esq. (FBN 710342)
          Email: rrocke@rmslegal.com
          Jonathan B. Sbar, Esq. (FBN 131016)
          Email: jsbar@rmslegal.com
          ROCKE, McLEAN & SBAR, P.A.
          2309 S. MacDill Avenue
          Tampa, FL 33629
          Phone: 813-769-5600
          Fax: 813-769-5601
          Attorneys for iControl Systems USA, LLC

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following by Electronic Mail on May 1, 2018.

Richard C. McCrea, Jr., Esq. (FBN 351539)
Catherine H. Molloy, Esq. (FBN 33500)
Greenberg Traurig, P.A.
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
Phone: 813-318-5700
Fax: 813-318-5900
Email: mccrear@gtlaw.com
Email: molloyk@gtlaw.com
Attorneys for Plaintiff

          /s/ Jonathan B. Sbar
          Attorney